The next case on for argument is NLRB versus Good morning, your honors. I'm Charles Pouch representing Nextar Broadcasting Group, Inc. When Nextar purchased the station in Elmira, New York, the television station there, it didn't realize what after that it spent time renegotiating the recognition provisions of the collective bargaining agreement it had with IATSE that it would be on this journey to this court. We don't belong here. The enforcement mechanism of the National Labor Relations Board has taken us into the wrong direction. This is not a Section 8A5 violation under the Katz decision as interpreted by the Pittsburgh Plate Glass decision. Instead, IATSE, if it was upset with how we were interpreting the collective bargaining agreement that it had just renegotiated, spending a year in negotiations with us, if they had a question with that, they had a remedy. The Supreme Court in the decision by Justice Brennan in 1971 said that. Justice Brennan and supported by a majority of the court, including the distinguished justice whom this courthouse is named after, all voted and said, that's not a Section 8A5 violation. When you change a permissive subject of bargaining, you make a change on it. It's not a Section 8A5 violation. Instead, the big picture question that is, maybe you can tell me why this has been so heavily litigated. These two employees, Dolan and Kastenhuber, were not treated as supervisors in the earlier collective bargaining agreement. There's a I have this long journey here for these two people who are making $12 an hour, $14 an hour, have been long-term employees of the station. What's the big deal here? The deal is that there was a deal struck. We do argue, and very strongly, that at the table, a deal was struck between the company and the union representatives. There were three separate meetings where this was discussed. It must be concluded differently. It said there wasn't a deal in its order. I'm just curious, why the long journey here for these two people? The long journey is based upon the belief of the people who bargained, essentially, that a deal is a deal. When you say something, and to be then castigated as an unfair labor practice, as opposed to a violation of the contract, it says, hey, you violated the Labor Act in a way that was unfair. And the Supreme Court has said in the How can you say that the deal excluded Kastenhuber when there's a side letter saying specifically about him that he's exempted or grandfathered from the provision of the union contract that would have reduced his vacation benefits? How can that exist consistently with an understanding that Kastenhuber wasn't part of the bargaining unit to whom this contract applied? That was done principally, and it would have been argued in the arbitration that should have been held. It should have been held on March 3rd. I'm asking the question, how can you maintain that there was a deal to exclude Kastenhuber from the bargaining unit, that that was agreed specifically by the union, that that's what this changed provision means, when there was a specific agreement as a side agreement to the CBA that would have no purpose if he were not a member of the bargaining unit? It was dealt with as a vested benefit. It was something he had earned while he was being Why do you make an agreement with the union as to whether he's included in this, whether he's grandfathered or accepted from this provision of the CBA, if you just made a specific agreement with them that Kastenhuber isn't part of the contract at all? It would be similar to, Your Honor, the Nolley Brothers principle, which is vested benefits are dealt with, and the company felt, and I'm hypothesizing, this isn't in the record as I know, but the company felt at that point that that was a vested benefit, that was a covered by the union contract. Why did the company sit at the table, across the table from Doland, representing the union, arguing on behalf of the union, negotiating on behalf of the bargaining unit, if we're making an agreement that he doesn't belong there at all? Doesn't that undermine the entire contract if he's representing the union when he's not part of it? He was there and he nodded. That's in the record. That's what your guy said, and the ALJ discredited your guy, right? Yeah, he did. Is that a clearly erroneous fact-finding under the circumstances that I just described? I'm not raising that point, Your Honor. You saw in our brief, we zeroed in extensively on who was making the decision, not how the decision was made. We would look at that and we would have presented arguments that would have made a totally different presentation to an arbitrator who was deciding, what does this contract mean? Does that make sense? The NLRB had no business in this. That's what Justice Brennan said in Pittsburgh Plaintiff's Glass. And was that in the context of removing someone from a bargaining unit? Yes. Well, no. No, you're right. It wasn't. It was in the context of other provisions, and aren't there Court of Appeals decisions, including decisions from this Court, that say that this is an exception? That when you take somebody out of the bargaining unit, that is a mandatory subject of bargaining? If those Courts of Appeals decisions had said that, that would be a different story. They'd never dealt with this issue. They ignored it. You do a cite, a word cite. But don't you see a significant difference between whether a person is in or out and we've got a couple of guys here, and doesn't get the benefit of the contract if he is out, and provisions that actually apply to, what was it, drug testing or whatever else, that tend to be these things that can be unilaterally imposed, the Supreme Court says. I see those as conditions of employment as opposed to who gets the protection of the contract. But the judge, the LJ in the case, and the board didn't deal with it the way you're dealing with it at all. They didn't try to . . . all they did with Pittsburgh Plague Glass, if you look at the judge's decision, and I can reference it specifically, all they did was say Pittsburgh Plague Glass involved the midterm modification. Well, would it have been any different if we had gone simply afterwards and just changed the permissive subject? We have to look at those cases in the context in which they are presented, Mr. Pouch, it seems to me. I mean, will we be wrong if we apply, and I'm not saying, I'm not speaking for my colleagues, if we apply the rationale that I just laid out to distinguish those two cases? I think you would be wrong in that because at least you'd be honest that in dealing with this case, perhaps because they have a 20-year history of the NLRB taking this position in these kinds of cases, and they've won some of those cases in the courts of appeals. Now, I understand you can make an argument that they're wrong and they've been wrong from the get-go, but it's not exactly the case that we're writing on a clean slate here, or that the Supreme Court just decided this yesterday and they've maintained this position, and why on earth doesn't anybody pay attention to it? The courts and the NLRB have distinguished this particular situation as being special. May I respond? My time is up at this point, or I can yield for rebuttal. Respond to Judge Lynch, and then we're going to let Ms. Ginn speak. I think that once confronted with this, the NLRB needed to go through a rational process to determine why this principle of law doesn't apply, and the thing that they chose, it's a midterm modification versus an implementation, makes no sense. That makes no sense at all. To say a midterm modification would be something you could do, and that's permissive bargaining, that's protective, whereas if you go ahead and try to change the contract, so it would have been lawful in the NLRB's opinion, following that judge's decision, had we just changed the contract, modified it. That, I don't think, is a logical position. I think we needed to have a proper analysis by the board to be respected. Otherwise, it's arbitrary and capricious, and it violates your rule on that point. And you've reserved some time. Yes, you've reserved two minutes for a minute. Good morning. Amy Ginn for the National Labor Relations Board. Let's talk about Pittsburgh Plate Glass and what the judge said here. The judge did not have to reach any further than to say, to distinguish the case on the basis that there was no midterm modification of the contract here. The judge did not say if there had been, it would have been fine. The judge said, this is an alteration in unit scope. The contract itself did not change. The recognition clause is the one that was proposed by the company and agreed to by the union. There was no change to the contract. The entire basis for excluding these employees from the unit was that they were purportedly supervisors. Now, substantial evidence in the record shows that the company failed to meet its burden of showing they were supervisors. So there was no basis to exclude them from the unit. When did the change occur, though? I'm sorry? When did the change occur? In the recognition clause? Yeah. Or excluded from the bargaining unit? The recognition clause in the contract was in March of 2014. I believe the contract was signed on March 24th. The company then said the two employees were out of the unit within a week. They said they were out of the unit. They said they were out of the unit because they were supervisors. Isn't that a midterm change? Well, there was no change to the language. And in fact... But isn't a midterm different treatment of these two employees? Isn't that what Pittsburgh Plate Glass talks about? Pittsburgh Plate Glass actually talks about a midterm modification of a contract term. So in that case, it was dealing with retirees' health benefits. And the issue there is that retirees are not employees under the Act. So their terms and conditions of retired employment... You would agree this is a permissive term, right? Unit scope is a permissive bargaining subject. And Pittsburgh Plate Glass was talking about that? Pittsburgh Plate Glass was talking about permissive subjects of bargaining, in particular, retiree health benefits. In that case, it was not talking about an alteration in unit scope. Every case that has looked at an alteration in unit scope, which goes beyond the contract, a unit, a bargaining unit is determined not just by what the parties agree to at the bargaining table, but a bargaining unit is determined, as in this case initially, through a board certification, a board election. So the board under 9B and 9C of the Act has the authority to determine a bargaining unit. And because of that, this court and all the courts that have looked at this issue have said that no party has unilateral power to modify a bargaining unit. It has to be done through board processes or through consent. But that consent process is also characterized, in some cases, as a permissive subject of bargaining, right? So isn't that more than a little confusing? It is. It is. The board determines this in the first instance, but then the parties are permitted to alter it by negotiation. They are permitted to alter it by negotiation. The discussion of unit scoping a permissive subject of bargaining is generally, and the Boise Cascade case from the D.C. Circuit talks about this a little more extensively, it's a permissive subject of bargaining because no one can insist on a term to impasse and then unilaterally implement. So for a mandatory subject of bargaining, at a good faith impasse, the employer can implement their final offer. With unit scope, an employer cannot do so. So it's a permissive subject in the sense that if there's no agreement, the status quo remains. But I guess what you're saying is another way of saying that the bargaining unit scope is special among permissive subjects of bargaining, to which this particular Pittsburgh plate glass rule would apply anomalously if we were to conclude that the employer could unilaterally change the scope of a bargaining unit after that has been agreed to by the parties and certified by the board. Is that basically the position? That's correct. And there are court of appeals cases that say just that. There are plenty of court of appeals cases that say no party can remove a job within a unit without approval of the board or union consent, including from this court. Is Mr. Pouch right? I don't want to put words in his mouth, but I think what he said was that none of those cases specifically say, and therefore, Pittsburgh plate glass does not apply in this circumstance? That's true. None of those cases say that. I mean, I would submit because that argument was not raised because parties have understood that an alteration of unit scope, the law says, is an unfair labor practice if it's done unilaterally. Well, sometimes somebody comes up with a clever argument that hasn't been raised before. Was there two tiers to permissive subjects of bargaining then? Is that what you're saying? The board has not addressed it in that way, so I would not say there are two tiers. I would say that unit scope has been characterized as a permissive subject of bargaining, but has always been treated by the courts and the board as something that no party can unilaterally change. As opposed to some conditions of employment, which can be unilaterally changed under Pittsburgh plate. Right. So things that are not mandatory subjects of bargaining as to terms and conditions of employment for employees. So for example, in Pittsburgh plate glass, it was because the health benefits were for retirees. Or in the Star Tribune case, it was because the drug and alcohol testing was for applicants, not for employees in the bargaining unit. And to be clear about what's at stake here, I take it no one is saying that the company could exclude people unilaterally from the bargaining unit that is agreed to in the contract at whim. The issue is what is the remedy if they do that? That is to say, should this be an unfair labor practice in the nomenclature of refusal to bargain? Or should the union say they've just breached what they just agreed to? They've breached the collective bargaining agreement by failing to treat these two gentlemen who are part of the bargaining unit as such. Isn't that what's at stake here, really? I mean, the board certainly takes the position it's an unfair labor practice. The company has stated that the union should have filed a grievance. We don't know what would have happened if the union had actually filed a grievance, of course. And so in terms of the remedy— But their position is a breach of contract issue, right? I believe that is their position. That's the position of the company. I believe that is their position, yes, that it's a breach of contract. I mean, it's also their position that— it continues to be their position that these employees are Section 211 supervisors, which the board found, based on substantial evidence, they're not. And in terms of any issue as to a bilateral agreement here, the board clearly found there was no bilateral agreement here. Made credibility determinations based on the evidence presented about the negotiations, and the company has not challenged those credibility determinations. In terms of the— Just to go back for a minute to the remedy, there are actually two unfair labor practice findings in this case. One is the unilateral removal of these employees from the bargaining unit. The other unfair labor practice here was the unilateral removal of their unit work, which is an unfair labor practice because it changes the terms and conditions of employment for those employees remaining in the bargaining unit. So these employees here did shooting work of news stories and editing of news stories, which was always unit work, which is still unit work. And so there's also an unfair labor practice here for removing that work from the unit. And they're— Removing the employees, did the work get removed? Yes, that's correct. Because Doland and Kastenhuber continue to perform the exact same job duties after their removal from the unit, including shooting news stories and editing news stories, which was always unit work, and which the company has not said is not unit work. So there's also a remedy for that specific— It got removed because they'd been removed and they were doing the work. Correct. That's correct. It still could have been covered for people who were still within the bargaining unit. Right. So, for example, if Doland and Kastenhuber really were Section 211 supervisors or there really was a lawful removal of them from the bargaining unit, the company still had an obligation to bargain with the union over the removal of the work they did that was unit work. I got it. And that bargaining did not happen. And do you rely on United Technologies, our case from 1989? Our—we said this thing about the bargaining unit being special for the first time in 1957, which is long before Pittsburgh Plate Glass. And then, am I right that that was reaffirmed in 1989? That's correct. But again, without specifically addressing Pittsburgh Plate Glass. Right. I believe it likely was not raised in that case. There's also another case we cite in our brief, Mount Sinai from 2001 from this court, which was an unpublished decision that addresses exactly the issue in this case. Thank you. Thank you very much. Mr. Pouch, you've received a reserve. Sorry, two minutes and we're done. Thank you, Your Honor. You asked earlier why the principle here, why the battle, why the extensive battle over this issue. The tag, it's a different thing to be a judge violative of unfair labor practice as opposed to a breach of contract. A tag, a company doesn't want to have that. An important principle, we should be able to select our supervisors. And if they're true supervisors, which the company does believe that they are, they should be in a position where, indeed, they are not represented by the union. Under the statutory framework, the company has its supervisors. The employees are represented by the union. So that's the answer to that question. Counsel raised the point about the transfer of work. I would refer the court to footnote three, where the board itself acknowledges in its brief the difficulty in calling it transfer of work versus alteration in the scope of the bargaining unit. They're defending the point that they thought and they believe that consistent with, well, they don't, they ignore Pittsburgh class, but we can't change the composition of the unit. So don't call it transfer of work if it's not. And they close their footnote where it says the board has rejected attempts to characterize a change in unit scope as a transfer of work where the same employees continue to do the work. It's not a transfer of work. It's a change in the scope of the bargaining unit. That's what the board itself would say in the Beverly case. So as a result of that, we have here a clear violation of the precedent. Is this footnote three of the board's order that you're pointing to? It's footnote three of the board's decision and order where it says that? Is that what you said? Yes. Yes. It's footnote three on page 20 of the board's brief. Oh, it's in the brief. I'm sorry, the board's brief. Footnote three. I thank you for the privilege of presenting the argument to this court. Thank you. Thank you both. We'll reserve decision in this case, but helpful arguments. Appreciate it.